**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CATHERINE COFFMAN,<br><br>Plaintiff,<br><br>v.<br><br>PS BUSINESS PARKS, INC., RONALD L. HAVNER, JR., MARIA R. HAWTHORNE, JENNIFER HOLDEN DUNBAR, M. CHRISTIAN MITCHELL, IRENE H. OH, KRISTY M. PIPES, GARY E. PRUITT, ROBERT S. ROLLO, JOSEPH D. RUSSELL, JR., PETER SCHULTZ, and STEPHEN W. WILSON,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Catherine Coffman ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against PS Business Parks, Inc. ("PSB" or the "Company") and the members of PSB's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection

with the Board's attempt to sell the Company to Blackstone Inc. ("Blackstone") (the "Proposed Transaction").

2. On April 24, 2022, PSB entered into an Agreement and Plan of Merger with PS Business Parks, L.P., Sequoia Parent LP ("Parent") and Parent's subsidiaries, Sequoia Merger Sub I LLC and Sequoia Merger Sub II LLC (the "Merger Agreement"). Parent is an affiliate of Blackstone. Pursuant to the terms of the Merger Agreement, Blackstone will acquire PSB for $187.50 in cash for each PSB common share (the "Proposed Transaction").

3. On June 8, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that PSB stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"); (iii) the go-shop period; and (iv) potential conflicts of interest faced by the Company's additional financial advisor Eastdil Secured Advisors LLC ("Eastdil") and Company insiders.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as PSB stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for PSB stockholders to vote on the Proposed Transaction is currently scheduled for July 15, 2022. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and PSB's other shareholders to make an informed decision

whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of PSB common stock.

10. Defendant PSB is a Maryland corporation, with its principal executive offices located at 701 Western Avenue, Glendale, California 91201. PSB's shares trade on the New York Stock Exchange under the ticker symbol "PSB."

11. Defendant Ronald L. Havner, Jr. has been Chairman of the Board and a director of the Company at all relevant times.

12. Defendant Maria R. Hawthorne has been Interim Chief Operating Officer and a director of the Company at all relevant times.

13. Defendant Jennifer Holden Dunbar has been a director of the Company at all relevant times.

14. Defendant M. Christian Mitchell has been a director of the Company at all relevant times.

15. Defendant Irene H. Oh has been a director of the Company at all relevant times.

16. Defendant Kristy M. Pipes has been a director of the Company at all relevant times.

17. Defendant Gary E. Pruitt has been a director of the Company at all relevant times.

18. Defendant Robert S. Rollo has been a director of the Company at all relevant times.

19. Defendant Joseph D. Russell, Jr. has been a director of the Company at all relevant times.

20. Defendant Peter Schultz has been a director of the Company at all relevant times.

21. Defendant Stephen W. Wilson has been President, Chief Executive Officer and a director of the Company at all relevant times.

22. Defendants identified in paragraphs 11-21 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

23. PSB is a real estate investment trust ("REIT") that acquires, develops, owns, and operates commercial properties, primarily multi-tenant industrial, flex, and office space. As of March 31, 2022, the Company wholly owned 27.0 million rentable square feet of commercial space in six states, comprising 96 parks and 652 buildings. The Company also held a 95.0% interest in a 395-unit apartment complex and a 98.2% interest in a development of a 411-unit multifamily apartment complex.

**The Proposed Transaction**

24. On April 25, 2022, PSB announced that it had entered into the Proposed Transaction, stating, in relevant part:

> GLENDALE, Calif. and NEW YORK--PS Business Parks, Inc. (NYSE:PSB) ("PSB" or the "Company") and Blackstone (NYSE:BX) today announced that they have entered into a definitive agreement under which affiliates of Blackstone Real Estate ("Blackstone") will acquire all outstanding shares of common stock of PSB for $187.50 per share in an all-cash transaction valued at approximately $7.6 billion, including transaction expenses. The purchase price represents a premium of approximately 15% to the volume weighted average share price over the last 60 days.
>
> Under the terms of the agreement, which has been unanimously approved by PSB's Board of Directors, Blackstone will acquire PSB's 27 million square foot portfolio of industrial, business park, traditional office, and multifamily properties located primarily in California, Miami, Texas and Northern Virginia.
>
> "I am extremely proud of everything we have accomplished at PS Business Parks. This transaction is an exceptional outcome for our stockholders and a testament to the incredible company and portfolio of high-quality assets our team has built, acquired and enhanced over the years," said Stephen W. Wilson, President and Chief Executive Officer of PSB.
>
> David Levine, Co-Head of Americas Acquisitions for Blackstone Real Estate, added, "We are excited to add PS Business Parks' business park, office and industrial assets to our portfolio and look forward to leveraging our expertise to provide the best possible service and experience for PSB's customers."
>
> **Transaction Details**
>
> The transaction is expected to close in the third quarter of 2022, subject to approval by PSB's stockholders and other customary closing conditions. The merger agreement includes a "go-shop" period that will expire 30 days from today on May 25, 2022, which permits PSB and its representatives to actively solicit and consider alternative acquisition proposals to acquire PSB. PSB has the right to terminate the definitive merger agreement with Blackstone to enter into a superior proposal, subject to the payment of a termination fee and certain other terms and conditions of the definitive merger agreement. There can be no assurance that this process will result in a superior proposal, and PSB does not intend to disclose developments with respect to the go-shop process unless and until it determines such disclosure is appropriate or is otherwise required.

PSB's three outstanding series of preferred stock, and associated depositary shares, will remain outstanding in accordance with their terms following the closing. We currently intend to continue to have the depositary shares representing our preferred stock listed on the NYSE with public reporting so long as there is at least $75 million aggregate liquidation value of preferred stock outstanding.

Public Storage (NYSE:PSA), which holds approximately 25.9% of the outstanding shares of PSB common stock, has agreed to vote its shares in favor of the transaction, subject to the terms of a support agreement between Public Storage, the Company and an affiliate of Blackstone, which support agreement will terminate automatically upon the termination of the merger agreement, including in connection with a termination of the merger agreement by PSB to enter into a superior proposal. The transaction will also include the acquisition of Public Storage's limited partner equity interests in PSB's operating partnership at the same per unit price of $187.50.

From the date of the merger agreement through the closing of the transaction, PSB may declare and pay regular, quarterly cash distributions to holders of its common stock and to holders of its operating partnership's units, in an amount of up to $1.05 per share or unit, including a pro rata distribution in respect of any stub period. Additionally, PSB is permitted to declare and pay regular quarterly dividends on its shares of preferred stock.

As a result of today's announcement, PSB does not expect to host a conference call and webcast to discuss its financial results for the quarter ended March 31, 2022, which had previously been scheduled for May 3, 2022.

**Advisors**

Simpson Thacher & Bartlett LLP is serving as Blackstone's legal counsel. J.P. Morgan Securities LLC is acting as lead financial advisor to PSB and provided a fairness opinion to the PSB board of directors in connection with the transaction. Eastdil Secured is acting as real estate advisor to PSB and is also acting as a co-financial advisor to PSB. Wachtell, Lipton, Rosen & Katz is serving as PSB's legal advisor.

**The Materially Incomplete and Misleading Proxy Statement**

25.     On June 8, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that PSB stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information,

concerning: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor J.P. Morgan; (iii) the go-shop period; and (iv) potential conflicts of interest faced by the Company's additional financial advisor Eastdil and Company insiders.

*Material Misrepresentations and/or Omissions Concerning the Company's Financial Projections*

26. The Proxy Statement fails to disclose material information concerning the Company's financial projections.

27. For example, with respect to the Company's financial projections, the Proxy Statement fails to disclose the line items underlying the Company's: (i) Cash Net Operating Income; (ii) Adjusted EBITDA; and (iii) Unlevered Free Cash Flow.

*Material Misrepresentations and/or Omissions Concerning J.P. Morgan's Financial Analyses*

28. The Proxy Statement fails to disclose material information concerning J.P. Morgan's financial analyses.

29. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose a quantification of: (i) PSB's terminal values; (ii) the inputs and assumptions underlying the discount rates ranging from 7.00% to 7.50%; and (iii) the net debt and other adjustments for the Company as of April 12, 2022.

30. With respect to J.P. Morgan's *Implied Capitalization Rate Valuation Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by J.P. Morgan.

*Material Misrepresentations and/or Omissions Concerning the Go-Shop Period*

31. The Proxy Statement fails to disclose material information concerning the go-shop period.

32. According to the Proxy Statement, in connection with the go-shop period, "the Company executed a confidentiality agreement with 12 parties (including Party A) and subsequently provided non-public information with respect to the Company to such parties." Proxy Statement at 43. The Proxy Statement fails, however, to disclose whether these confidentiality agreements include a "don't-ask, don't-waive" standstill provision that is still in effect and presently precluding any of these parties from submitting a topping bid for the Company.

*Material Misrepresentations and/or Omissions Concerning Eastdil's and Company Insiders' Potential Conflicts of Interest*

33. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by the Company's additional financial advisor Eastdil.

34. For example, the Proxy Statement fails to disclose the terms of Eastdil's engagement, including: (i) the amount of compensation Eastdil has received or will receive in connection with its engagement; (ii) the amount of Eastdil's compensation that is contingent upon consummation of the Proposed Transaction; and (iii) whether Eastdil has performed any services for any parties to the Merger Agreement in the prior two years and, if so, the nature of the services performed and amount of compensation received.

35. The Proxy Statement also fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

36. Specifically, the Proxy Statement fails to disclose whether any members of Company management have secured positions with the combined company. Similarly, the Proxy Statement fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between Blackstone and PSB's executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Blackstone's proposals or indications of interest

8

mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

37. In sum, the omission of the above-referenced information renders statements in the "Forward-Looking Financial Information," "Opinion of the Company's Financial Advisor," "Background of the Mergers," and "Interests of Our Directors and Executive Officers in the Company Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of PSB will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and PSB**

38. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

39. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. PSB is liable as the issuer of these statements.

40. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

41. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

42. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

43. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

44. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

45. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

46. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of PSB within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of PSB and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

50. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of PSB, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction,

including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  June 23, 2022                                             **ACOCELLI LAW, PLLC**

By   */s/ Richard A. Acocelli*
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*